NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO B.V.

No. 1 CA-JV 23-0036
FILED 6-27-2023

Appeal from the Superior Court in Maricopa County
JD29462
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

**K I L E Y**, Judge:

¶1   Mattique J. ("Mother") appeals the juvenile court's order terminating her parental rights to her child, B.V. Because reasonable evidence supports the termination order, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2   In March 2019, Mother and Brandon V. ("Father") took their six-month-old child, B.V., to the hospital when the child began shaking uncontrollably. B.V. was diagnosed with a seizure disorder.

¶3   While the parents and B.V. were at the hospital, DCS received a report that the police had been called to the scene after Mother claimed that Father grabbed her by the throat. The record does not make clear whether the police arrested Father.[1]

¶4   During the ensuing DCS investigation, Mother reported that, before she and Father separated shortly after B.V.'s birth, she had "made many [police] reports" about Father's acts of domestic violence over the course of their relationship. Mother nonetheless stated she had no concerns about B.V.'s safety with Father, explaining that, notwithstanding his acts of domestic violence, Father is "a good guy." At DCS's request, Mother underwent a hair follicle test; the results were positive for cocaine and THC (marijuana).

¶5   Although B.V.'s hospital discharge instructions included scheduling both a follow-up appointment and an appointment with a neurologist, neither Mother nor Father ever scheduled either appointment for the child.

¶6   DCS removed B.V. from the parents' custody and filed a dependency petition in May 2019. The dependency petition alleged that

---

[1] The record indicates, however, that the police arrested Mother on an outstanding warrant for prostitution.

Mother did not provide "proper and effective parental care" due to substance abuse, mental health issues, domestic violence, and a failure "to provide for the child's basic needs." The petition further alleged that Father did not properly care for B.V. due to domestic violence and was neglecting B.V.'s basic needs. The juvenile court adjudicated B.V. dependent as to both parents. B.V. was placed with her paternal grandmother in California.

**¶7**        In April 2020, Mother self-referred for substance abuse treatment. In her intake, she indicated that she "used to struggle with cocaine" but had "not been hooked on it for 3-4 years." She admitted, however, that she had not given up on cocaine use entirely, stating that she "would only use recreational now."

**¶8**        Mother successfully completed her substance abuse treatment in October 2020. After that, Mother engaged in substance abuse testing sporadically, going months at a time without testing at all.[2] Not until February 2022 did Mother begin to undergo testing consistently. In February 2022, she underwent a hair follicle test that was negative for cocaine. In April 2022, however, she underwent a urinalysis test that was positive for cocaine. Three months later, Mother stopped testing altogether.

**¶9**        In September 2022, DCS moved to terminate Mother's and Father's parental rights to B.V. on the grounds of substance abuse, *see* A.R.S. § 8-533(B)(3), and B.V.'s extended out-of-home placement, *see* A.R.S. § 8-533(B)(8)(a), (c).

**¶10**        The matter proceeded to trial in November 2022. At trial, Mother testified that she first used cocaine—"just a one-time use"—when she was sixteen years old. She testified that she began using "like twice a month" during her two-year relationship with Father but had not used cocaine since their relationship ended in 2018. Mother explained that, during their relationship, she felt compelled to use cocaine whenever Father did for fear that he "would beat the heck out of [her]" if she refused to "party" with him. Mother disputed the accuracy of the April 2022 positive urinalysis test results, explaining that, upon receiving the results, she immediately offered to undergo a hair follicle test because she "knew [the positive result] wasn't possible."

**¶11**        Mother also testified that she maintained a relationship with B.V. over the course of the dependency proceedings by calling or video

---

[2] When she did test, Mother consistently tested positive for THC, which was unsurprising because she had a medical marijuana card.

chatting daily. She stated that she traveled to placement's home in California to visit B.V. in September 2022, and that she would have visited B.V. more often if she could have afforded to do so.

**¶12** DCS Case Manager Christopher Melton testified, *inter alia*, that Mother told him in November 2021 that she was participating in weekly domestic violence counseling at the Family Involvement Center. When Melton contacted the Family Involvement Center to verify Mother's report, he learned that Mother was not engaged in domestic violence counseling or receiving any services other than housing support. Moreover, Melton learned that the person that Mother identified as her counselor at the Family Involvement Center was no longer employed there. At trial, Mother did not controvert Melton's testimony on this point.

**¶13** The juvenile court terminated Mother's parental rights under A.R.S. § 8-533(B)(3) (substance abuse) and A.R.S. § 8-533(B)(8) (fifteen months' time-in-care). Mother appealed, and we have jurisdiction.[3] *See* A.R.S. §§ 8-235(A), 12-120.21(A), -2101(A)(1).

## DISCUSSION

**¶14** Parents' right to the custody and control of their children, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). Termination of a parent's rights requires proof, by clear and convincing evidence, of one of the statutory grounds set forth in A.R.S. § 8-533(B). *Id.* at 249, ¶ 12. Evidence is "clear and convincing" if it is "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005) (citation omitted). The court must also find, by a preponderance of the evidence, that termination is in the child's best interests. *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474, ¶ 13 (2022).

**¶15** "We review an order terminating a parent's relationship with his or her child . . . in the light most favorable to sustaining the superior court's ruling." *Calvin B. v. Brittany B.*, 232 Ariz. 292, 296, ¶ 17 (App. 2013). We "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). This Court does not reweigh the evidence on review but "look[s] only to determine if there is evidence to sustain the

---

[3] The court also terminated Father's rights, but he is not a party to this appeal.

court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶16** A.R.S. § 8-533(B)(3) establishes grounds for termination if "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." "[D]rug abuse need not be *constant* to be considered *chronic*." *Raymond F. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010) (emphasis added). Rather, chronic drug abuse is that which "last[s] a long time" and is "long-continued, lingering, and inveterate." *Id.* (citation omitted).

**¶17** Mother argues that the evidence at trial did not establish that she "had a continuing issue with cocaine" after her relationship with Father ended, asserting that she successfully completed substance abuse treatment in October 2020, tested "clean" in February 2022, and disputed the positive results of the drug test in April 2022. "Even if the April 2022 test was accurate," Mother argues, "it showed nothing more than one 'stumble' over a multi-year period."

**¶18** We disagree. The undisputed evidence shows that Mother used cocaine before, during, and after her relationship with Father. Mother testified at trial that she first used cocaine when she was sixteen years old and that she used it multiple times each month throughout her two-year relationship with Father. Mother underwent a hair follicle test in April 2019 that was positive for cocaine. Evidence in the record establishes that a positive hair follicle test result "indicates chronic long-term use." Although Mother testified that she had not used cocaine since "probably like October of 2018," she admitted during her substance abuse treatment intake in 2020 that she "would only use recreational now." And though Mother disputed the positive results of the April 2022 urinalysis test, it is the juvenile court's prerogative to weigh conflicting evidence and make credibility determinations. *See Mary Lou C.*, 207 Ariz. at 47, ¶ 8. Because Mother's cocaine use started when she was a teenager and continued into adulthood — and as recently as seven months before the termination trial — a reasonable fact finder could find it highly probable or reasonably certain that Mother has a history of chronic cocaine use. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016) ("Chronic substance abuse" within the meaning of A.R.S. § 8-533(B) is "long-lasting but not necessarily constant substance abuse.")

**¶19** Moreover, a fact finder could reasonably find grounds to believe that Mother's cocaine use would continue for a "prolonged" and "indeterminate period." *See* A.R.S. § 8-533(B)(3). When assessing whether "the condition will continue for a prolonged indeterminate period," a court may consider "the length and frequency" of a parent's "prior substance abuse" and the results of the parent's "prior efforts to maintain sobriety." *Jennifer S.*, 240 Ariz. at 287, ¶¶ 19-20. "It is not the number of times that [a parent] has tested positive or negative for drug abuse that is key, but rather, it is the fact that [the parent] has consistently failed to *abstain* from drugs." *Raymond F.*, 224 Ariz. at 379, ¶ 29.

**¶20** Here, Mother not only has a lengthy history of cocaine use but also failed to engage consistently in drug testing during the dependency proceedings, leaving the court unable to assess her current sobriety. Mother's claim to have abstained from cocaine use since 2018 cannot be accepted at face value, particularly since she was found to have lied when she claimed to be engaged in domestic violence counseling in November 2021. And Mother's failure to undergo any testing at all after July 2022, even after DCS filed its termination motion in September 2022, further shows that she is unable to rise above her addiction. *See Raymond F.*, 224 Ariz. at 379, ¶ 29 (noting that a parent's "failure to remedy his [or her] drug abuse[,] despite knowing the loss of his [or her] children was imminent, is evidence [the parent] has not overcome" his or her drug dependence); *see also Jennifer S.*, 240 Ariz. at 287-88, ¶¶ 21, 25 (citing mother's "refus[al] to take most of her required drug tests" as record support for juvenile court's finding that "reasonable grounds exist to believe the condition will continue for a prolonged indeterminate period"). We therefore conclude that the juvenile court properly found, by clear and convincing evidence, reasonable grounds to believe Mother's chronic drug use would continue for a prolonged, indeterminate period.

**¶21** The juvenile court found that Mother's chronic substance abuse leaves her "unable to discharge parental responsibilities" because her "inability to maintain sobriety" deprives B.V., a young and vulnerable child, of "a safe and stable home." Among other things, the court noted, Mother failed to arrange follow-up medical care for B.V.'s seizure disorder after the child's discharge from the hospital in March 2019. Mother does not challenge this finding, and we need not address it further. Reasonable evidence, therefore, supports the juvenile court's finding of statutory grounds for termination under A.R.S. § 8-533(B)(3).

**¶22** Because clear and convincing evidence supports termination of Mother's parental rights under A.R.S. § 8-533(B)(3) (substance abuse), we

need not evaluate whether reasonable evidence also supports the court's termination under A.R.S. § 8-533(B)(8) (fifteen months' time-in-care). *See Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

**¶23**        A court cannot terminate a parent's rights without first finding that termination is in the child's best interests. A.R.S. § 8-533(B); *Michael J.*, 196 Ariz. at 249, ¶ 12. Here, the court found that termination was in B.V.'s best interests because she was in an adoptive kinship placement where her needs were being met. Indeed, the court found, B.V. was "thriving in her current placement." Mother does not challenge the court's best interests determination on appeal. We therefore accept it and need not address it further. *See Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 97, ¶ 20 n.7 (App. 2009) (affirming termination order in part because appellant did not "challenge the juvenile court's finding that termination of her parental rights was in the best interests of the children").

## CONCLUSION

**¶24**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA